UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

| | |
|---|---|
| EAST COAST BROKERS & PACKERS, INC. | Case No. 8:13-bk-2894-KRM |
| BATISTA J. MADONIA, SR. and EVELYN M. MADONIA, | Case No. 8:13-bk-2895-KRM |
| CIRCLE M RANCH, INC. | Case No. 8:13-bk-2896-KRM |
| RUSKIN VEGETABLE CORPORATION, | Case No. 8:13-bk-2897-KRM |
| OAKWOOD PLACE, INC., | Case No. 8:13-bk-2898-KRM |
| BYRD FOODS OF VIRGINIA, INC., | Case No. 8:13-bk-3069-KRM |
| EASTERN SHORE PROPERTIES, INC., | Case No. 8:13-bk-3070-KRM |
| STELLARO BAY, INC., | Case No. 8:13-bk-3071-KRM |
| Debtors. | **Jointly Administered Under Case No. 8:13-bk-2894-KRM** |

_____/

## NOTICE OF FILING OF REAL ESTATE PURCHASE AND SALE AGREEMENT (VIRGINIA) FOR REAL PROPERTY ASSET D-3[1]

Gerard A. McHale, Jr., the duly appointed and acting Chapter 11 Trustee (the "**Trustee**") for the estates of East Coast Brokers & Packers, Inc. ("**East Coast**"), Batista J. Madonia, Sr. and Evelyn M. Madonia (together the "**Madonias**"), Circle M. Ranch, Inc. ("**Circle M**"), Ruskin Vegetable Corporation ("**Ruskin Vegetable**"), Oakwood Place, Inc. ("**Oakwood Place**"), Byrd Foods of Virginia, Inc. ("**Byrd Foods**"), Eastern Shore Properties, Inc. ("**Eastern Shore**"), and Stellaro Bay, Inc. ("**Stellaro Bay**") (collectively the "**Debtor**s"), through counsel, pursuant to *Order (I) Granting Trustee's Motion to Establish Sales Procedures for Public Sale of Real and Personal Property, (II) Granting, In Part, Trustee's Emergency Motion to Sell Property Free and Clear of Liens, and (III) Scheduling Further Hearings* [ECF 319](the "**Sales Procedure Order**"), files the executed[2] Real Estate Purchase and Sale Agreement (Virginia) entered into between the Trustee, as Seller, and **Christiana Trust, a division of Wilmington Savings Fund**

---

[1] Property reference numbers track those attached as exhibits to the Sales Procedure Order.
[2] In the interest of time, a supplemental notice will be filed upon receipt of all signatures.

5185494-1

**Society, FSB, as Trustee for Starwich Mortgage Loan Trust, Series 2012-13**, or its permitted assigns, as Buyer, a true and correct copy of which is attached hereto as Exhibit "A."

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically through the Court's CM/ECF system upon all parties on the attached Service List on this 4th day of September, 2013.

>BERGER SINGERMAN LLP
>*Counsel for the Trustee*
>1450 Brickell Avenue, Suite 1900
>Miami, FL 33131
>Tel. (305) 755-9500
>Fax (305) 714-4340
>
>By:   */s/ Debi Evans Galler*
>       Jordi Guso
>       Florida Bar No. 863580
>       jguso@bergersingerman.com
>       Debi Evans Galler
>       Florida Bar No. 985236
>       dgaller@bergersingerman.com

## SERVICE LIST

- Shirley C. Arcuri sarcuri1@tampabay.rr.com
- Zachary J Bancroft zbancroft@bakerdonelson.com, sdenny@bakerdonelson.com;fedcts@bakerdonelson.com
- Gary A Barnes gbarnes@bakerdonelson.com, mparris@bakerdonelson.com;kfurr@bakerdonelson.com
- Denise E Barnett denise.barnett@usdoj.gov
- Nathan M Berman nberman@zuckerman.com
- Steven M Berman sberman@slk-law.com
- Andrew M. Brumby abrumby@shutts-law.com, dbonilla@shutts.com;jtimko@shutts.com
- Lisa M Castellano lcastellano@becker-poliakoff.com, thenry@becker-poliakoff.com
- Colleen Murphy Davis colleen.murphy@usdoj.gov, beverly.lanier@usdoj.gov;ivonne.williams@usdoj.gov
- Herbert R Donica ecf-hrd@donicalaw.com, ecf-cd@donicalaw.com;harrison@donicalaw.com;hrdecf@gmail.com
- Robert F Elgidely relgidely@gjb-law.com, vlambdin@gjb-law.com;chopkins@gjb-law.com
- Brian T FitzGerald fitzgeraldb@hillsboroughcounty.org, litigation@hillstax.org;connorsa@hillsboroughcounty.org;jacksonDa@hillsboroughcounty.org
- Debi Evans Galler dgaller@bergersingerman.com, efile@bergersingerman.com;jalvarez@bergersingerman.com
- Jordi Guso jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com
- Patti W Halloran phalloran@gibblaw.com
- Michael A. Kaufman michael@mkaufmanpa.com, kaufmanesq@gmail.com,diamondmk@aol.com,gstolzberg@mkaufmanpa.com,samkraut@mkaufmanpa.com
- William M Lindeman w.lindeman@wmlpa.com, vickie.p@wmlpa.com
- Michael P Maguire michael.maguire@hklaw.com, laura.wiseman@hklaw.com
- Robert B Marcus rmarcus@attorneymm.com, mail@attorneymm.com
- Michael C Markham mikem@jpfirm.com, minervag@jpfirm.com;angelinal@jpfirm.com
- Kent D McPhail bankruptcynotices@dumasmcphail.com, sylvia@dumasmcphail.com
- John H Mueller jmueller@sclegal.com, jhmsecy@sclegal.com
- Brian G. Rich brich@bergersingerman.com, efile@bergersingerman.com;jdiaz@bergersingerman.com;kbeck@bergersingerman.com;bwalter@bergersingerman.com
- Susan H Sharp ssharp.ecf@srbp.com, srbpecf@srbp.com
- Susan K Spurgeon susan@penningtonlaw.com, sue@penningtonlaw.com
- Scott A. Stichter sstichter.ecf@srbp.com, srbpecf@srbp.com
- Suzy Tate suzy@suzytate.com, katie@suzytate.com
- Cheryl Thompson cthompson@anthonyandpartners.com, rbrown@anthonyandpartners.com;efilings@anthonyandpartners.com
- John B Timmer jtimmer@zuckerman.com
- United States Trustee - TPA USTPRegion21.TP.ECF@USDOJ.GOV
- Ted W Weeks tww@lawofficetweeks.com, assistant@lawofficetweeks.com
- Hugo S deBeaubien bdebeaubien@slk-law.com, dborden@slk-law.com

5185494-1

## **EXHIBIT A**

5185494-1

## REAL ESTATE PURCHASE AND SALE AGREEMENT
## (VIRGINIA)

THIS REAL ESTATE PURCHASE AND SALE AGREEMENT (this "**Agreement**") is made by and between Gerard A. McHale, Jr., the Chapter 11 Trustee (the "**Trustee**") for the bankruptcy estates of East Coast Brokers & Packers, Inc. ("**East Coast**"), Batista J. Madonia, Sr. a/k/a Batista J. Madonia Jr. and Evelyn M. Madonia (together the "**Madonias**"), Circle M. Ranch, Inc. ("**Circle M**"), Ruskin Vegetable Corporation ("**Ruskin Vegetable**"), Oakwood Place, Inc. ("**Oakwood Place**"), Byrd Foods of Virginia, Inc. ("**Byrd Foods**"), Eastern Shore Properties, Inc. ("**Eastern Shore**"), and Stellaro Bay, Inc. ("**Stellaro Bay**") (collectively the "**Seller**") and CHRISTIANA TRUST, a division of Wilmington Savings Fund Society, FSB, as Trustee for Starwich Mortgage Loan Trust, Series 2012-13 ("**Buyer**"), as of the latter date of execution by the parties hereto (the "**Effective Date**").

### RECITALS

A.     Seller is the owner of a certain parcel of land located in Northampton County, Virginia, more particularly described in **Exhibit "A"** attached hereto and made a part hereof, together with all buildings and other improvements situated thereon, including, but not limited to, any fixtures, building materials or equipment located thereon, if any, located at 111 Creekside Lane, Cape Charles, Virginia (such real property and the improvements thereon, if any, are collectively referred to herein as the "**Real Property**").

B.     Seller desires to sell to Buyer, and Buyer desires to buy from Seller, upon the terms and conditions set forth herein, the Property (as defined below).

C.     On March 6, 2013 and March 11, 2013, the Seller filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**"). Pursuant to an Order entered by the Bankruptcy Court dated March 13, 2013, the Debtors' Chapter 11 cases are being jointly administered for procedural purposes only under In re: East Coast Brokers & Packers, Inc., Case No. 8:13-bk-2894-KRM. On June 21, 2013, the Bankruptcy Court entered Order Approving Application to Appoint Chapter 11 Trustee, Gerald A. McHale, Jr. This Agreement and the transaction contemplated hereby shall in its entirety be subject to the approval and authorization of the Bankruptcy Court, and is therefore subject to higher and better offers.

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### AGREEMENT

NOW, THEREFORE, in consideration of the terms and conditions of this Agreement, and the mutual covenants herein contained, Buyer and Seller hereby agree as follows:

1. **Property Description.** Seller shall sell and convey to Buyer, and Buyer shall purchase and acquire from Seller, upon and subject to the terms and conditions set forth in this Agreement, the following (collectively, the "**Property**"):

   1.1. **Real Property.** Subject to the Permitted Exceptions (as defined below), the Real Property, together with Seller's interest in any buildings, leases, subleases, licenses, concessions, contracts affecting the Real Property, easements, appurtenances, rights, privileges, reversionary interests and improvements thereunto belonging or appurtenant to the Real Property, including without limitation, all of Seller's rights to utilities serving the Real Property and all right, title and interest of Seller in and to all rights-of-way, rights of ingress or egress or other interests in, on, or to, any land, highway, street, road, or avenue, open or proposed, in, on, or across, in front of, abutting or adjoining the Real Property.

   1.2. **Items of Personal Property Included.** Any personal property located on the Real Property set forth on Schedule 1.2 (the "**Personal Property**").

   1.3. **Other.** All approvals, applications and permits associated with the Real Property, studies, designs and related materials, and any goodwill related thereto, to the extent same is transferable to Buyer by Seller.

2. **Purchase Price.** Buyer has made a credit bid of One Million and 00/100 Dollars ($1,000,000.00) (the "**Purchase Price**") for the purchase of the Property. Buyer is a secured creditor of Seller in connection with Seller's bankruptcy proceedings in the Bankruptcy Court.

3. **Payment of Purchase Price.** In addition to Buyer's credit bid for the Purchase Price, Buyer shall pay the following:

   3.1. **Cash to Close.** On the Closing Date (as defined below), Buyer shall pay (i) the "Transaction Fee" due to Murray Wise Associates, LLC; (ii) the "Carve-Out" due to the Trustee and (iii) all closing costs of Buyer in connection with this transaction, all in immediately available funds, subject to the typical closing prorations set forth below (collectively, the "**Cash to Close**"). The terms "Transaction Fee" and "Carve-Out" shall have the meanings given to those terms under the Order (I) Granting Trustee's Motion to Establish Sales Procedures for Public Sale of Real and Personal Property, (II) Granting, in part, Trustee's Emergency Motion to Sell Property Free and Clear of Liens, and (III) Scheduling Further Hearings entered by the Bankruptcy Court on July 24, 2013.

4. **Closing Date.** This Agreement is subject to approval by the Bankruptcy Court. The transaction contemplated hereunder shall be consummated (the "**Closing**") on a mutually agreeable date within thirty (30) days from receiving the Bankruptcy Court's approval (the "**Closing Date**") at the offices of Willcox & Savage, P.C. or by mail.

5. **Title Matters.**

   5.1. **Title Commitment.** Within ten (10) days after the Effective Date, Seller shall furnish to Buyer, at Buyer's expense, a commitment for title insurance covering the Real Property (the "**Commitment**") and issued by a title insurance company reasonably acceptable to Buyer (the "**Title Company**"), together with legible copies of all instruments and documents

affecting title to the Real Property and listed in the Commitment. The Commitment shall agree to issue to Buyer, upon the Closing of this transaction, a title insurance policy in the full amount of the Purchase Price, without exception for any matters other than the Permitted Exceptions (as defined below); provided, however, it is understood that the actual title requirements may vary depending on the final structure and approval of the Bankruptcy Court. Seller and Buyer both agree to use all commercially reasonable efforts to satisfy the Commitment requirements as may be approved by the Bankruptcy Court. For the purposes of this Agreement, "Permitted Exceptions" shall mean and include (i) zoning and building ordinances and land use regulations applicable to the Real Property, (ii) code enforcement violations, if any, (iii) such state of facts as are shown on any survey or as would be disclosed by an accurate survey of the Real Property, (iv) the lien of taxes and assessments not yet due and payable, (v) any standard exclusions from coverage set forth in the jacket of the title policy, (vi) any exceptions caused by Buyer, its agents, representatives or employees, (vii) all proforma exceptions commonly contained in Schedule B-II of the Commitment, (viii) all other matters which arise as a result of Seller performing its covenants hereunder, (ix) all matters disclosed by Seller including any other leases or contracts, and (x) any other liens, encumbrances or instruments of record which do not materially adversely affect title to the Real Property or the value of the Real Property.

    5.2.    **Title Objections.** Within five (5) days of Buyer's receipt of the Title Commitment (the "**Title Objection Period**"), Buyer shall notify Seller of any additional title matters not a Permitted Exception that renders title unmarketable. Seller shall have five (5) days from receipt of such notice within which to cure such objection using commercially reasonable efforts, and if Seller is unsuccessful in curing them within such period, Buyer shall, upon written notice to Seller within five (5) days from expiration of the five (5) day cure period, either: (1) accept the title to the Property as it then is with no reduction in the Purchase Price, or (2) terminate this Agreement and receive a return of the Deposit and thereupon Buyer and Seller shall be released, as to one another, of all further obligations hereunder, except for those obligations which survive termination. Seller shall have no obligation to bring suits to correct any defect(s) in title. If Buyer does not give written notice of termination within such five (5) day period in accordance with the foregoing, Buyer shall be deemed to have elected to accept the status of the title to the Property as it then exists without any reduction of the Purchase Price. Any and all new title or survey matters that Buyer does not timely object to in writing in accordance with the foregoing or which are subsequently waived by Buyer in accordance with the foregoing and shall be further deemed to be included in the Permitted Exceptions.

    6.    **Conditions Precedent.** Buyer's obligation to consummate this transaction is expressly conditioned only upon the matters set forth in this Section 6. In the event that all of the conditions precedent are not satisfied by Seller or waived by Buyer in writing by Closing, following written notice to Seller and a ten (10) day opportunity to cure, Buyer may terminate this Agreement and receive a return of the Deposit free of any claims by Seller or any other party with respect thereto.

    6.1.    **Accuracy of Representations.** Each of the representations and warranties made by Seller in this Agreement will be true and correct in all material respects as of the date made.

3

**6.2. Compliance with Covenants.** Seller shall have complied with all of Seller's covenants and requirements in this Agreement to be performed by Seller in all material respects.

**6.3. Final Sale Order.** Seller shall have obtained an order from the Bankruptcy Court transferring the Property to Buyer free and clear of liens and claims, and such order is an unappealable order (or has become unappealable, including by virtue of a waiver in the Order of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014) (the "**Final Sale Order**"). Such Final Sale Order shall contain good faith findings pursuant to 11 U.S.C. § 363(m).

**7. Conditions Precedent.** Seller's obligation to consummate this transaction is expressly conditioned upon the matters set forth in this Section 7. In the event that all of the conditions precedent are not satisfied by Buyer or waived by Seller in writing by Closing, following written notice to Buyer and a ten (10) day opportunity to cure, then Buyer shall be in default of this Agreement and Seller shall have no obligation to close hereunder:

**7.1. Accuracy of Representations.** Each of the representations and warranties made by Buyer in this Agreement will be true and correct in all material respects on the Closing Date as if made on and as of such date.

**7.2. Compliance with Covenants.** Buyer shall have complied with all of Buyer's covenants and requirements in this Agreement to be performed by Buyer in all material respects, including but not limited to, full payment of the Purchase Price.

**7.3. Bankruptcy Court Approval.** If the Bankruptcy Court shall disapprove this Agreement, this Agreement shall automatically terminate and the parties hereto shall have no further obligations to one another except for matters which expressly survive termination. If the Bankruptcy Court shall fail to approve this Agreement within forty-five (45) days from the Effective Date, then at any time after said forty-five (45) day period Buyer may terminate this Agreement by delivering written notice to Seller.

**8. Condition of Property.** Except as otherwise expressly set forth in this Agreement or in the documents executed at Closing, Buyer, upon Closing, accepts the Property and improvements thereon in its "**AS IS**" condition, with all faults, subject only to the express representations and warranties made in this Agreement. Buyer acknowledges and affirms that Seller and/or its affiliated entities own large landholdings consisting of commercial, residential and agricultural property in multiple states. Certain of these properties have been out of operation or otherwise unoccupied for some time. As a consequence, Seller cannot and should not be expected to know of the condition of the Real Property as it pertains to defects and/or environmental contamination. Buyer is encouraged to conduct a through examination of the Property.

Seller is making no warranties or representations of any kind or character, express or implied, with respect to the Property or any part or component thereof, including without limitation, warranties or representations as to matters of title, zoning, tax consequences, physical or environmental condition, operating history or projections, valuation, governmental approvals, governmental regulations or any other matter or thing relating to or affecting the Property.

Buyer has not relied upon and will not rely upon, either directly or indirectly, any oral or written statement by Seller or any of Seller's employees, agents, brokers, or independent contractors. Buyer will conduct such inspections and investigations of the Property as Buyer deems necessary or appropriate for Buyer's intended uses of the Property, including without limitation, the physical and environmental condition thereof, will rely upon the same and, upon Closing, shall assume the risk that adverse matters may not have been revealed by Buyer's inspections and investigations. Upon Closing, Seller shall convey to Buyer, and Buyer shall accept the Property, **"AS IS," "WHERE IS," "WITH ALL FAULTS,"** including all observable and non-observable defects (latent or patent) and deficiencies therein, and Buyer agrees that there are no oral agreements, warranties, or representations by Seller or any third party that are collateral to or affect the Property. The provisions of this Section 8 shall expressly survive the Closing and not merge therein. Seller has not made, does not make, and specifically negates and disclaims, all representations, warranties, promises, covenants, agreements or guarantees of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to, without limitation, (i) the suitability of the Property for Buyer; (ii) the habitability, merchantability, marketability, profitability or fitness for a particular purpose of the Property; (iii) the compliance of or by the Property with any laws, rules, ordinances or regulations of any applicable governmental authority or body; (iv) compliance with any environmental protection, pollution or land use laws, rules, regulations, order or requirements; (v) the conformity of the Property to past, current or future applicable zoning or building requirements; (vi) the fact that all or a portion of the Property may be located in an earthquake, seismic, fire, or flood hazard zone; (vii) the existence or lack of vested land use, zoning or building entitlements affecting the Property; and (viii) warranties with respect to the uses permitted on, the development requirements for, or any other matter or thing relating to the Property, or any portion thereof.

9. **Seller's Representations.** Seller hereby makes the following representations, and warranties as of the date hereof:

    9.1. **Organization and Authorization.** Subject to the Bankruptcy Court's approval of this Agreement, Seller is authorized to sell property in the state in which the Property is located, and Seller has full power and authority to enter into and perform this Agreement in accordance with its terms.

    9.2. **Ownership.** Seller is the sole owner of the Property.

    9.3. **FIRPTA.** Seller is a "United States person" within the meaning of Sections 1445(f)(3) and 7701(a)(30) of the Internal Revenue Code of 1986, as amended.

10. **Buyer's Representations.** Buyer hereby makes the following representations, which shall be deemed remade by Buyer as of Closing and shall survive Closing:

    10.1. **Organization and Authority.** Buyer is a _____ organized under the laws of the State of _____, and its status is active. Buyer possesses all requisite power and authority to enter into and perform this Agreement and to carry out the transaction contemplated herein.

**10.2. No Conflicts.** Buyer's entry into and performance of this Agreement does not conflict with or violate any contracts, leases, agreements or undertakings between Buyer and any third parties.

**10.3. Bankruptcy.** No bankruptcy, insolvency, rearrangement or similar action involving Buyer, whether voluntary or involuntary, is pending or threatened, and Buyer has no intention of filing any such action or proceeding.

**10.4. Due Authorization.** This Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary action on the part of Buyer. This Agreement constitutes the legal, valid and binding obligation of Buyer enforceable in accordance with its terms.

**10.5. USA Patriot Act.** Buyer hereby warrants and represents that: (i) none of the funds to be used for payment by Buyer of the Purchase Price will be subject to 18 U.S.C. §§ 1956-1957 (Laundering of Money Instruments), 18 U.S.C. §§ 981-986 (Federal Asset Forfeiture), 18 U.S.C. §§ 881 (Drug Property Seizure), Executive Order Number 13224 on Terrorism Financing, effective September 24, 2001, or the United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, H.R. 3162, Public Law 107-56 (the "**USA Patriot Act**") and (ii) Buyer is not, and will not become, a person or entity with whom U.S. persons are restricted from doing business with under the regulations of the Office of Foreign Asset Control ("**OFAC**") of the Department of Treasury (including those named on OFAC's Specially Designed and Blocked Persons list) or under any statute, executive order (including the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), the USA Patriot Act, or other governmental action.

**10.6. AS-IS.** BUYER ACKNOWLEDGES TO AND AGREES WITH SELLER THAT BUYER IS PURCHASING THE PROPERTY IN AN "AS IS" CONDITION "WITH ALL FAULTS" AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, OF ANY KIND, NATURE OR TYPE WHATSOEVER FROM OR ON BEHALF OF SELLER OTHER THAN THOSE EXPRESSLY STATED IN THIS AGREEMENT.

**11. Closing and Escrow.**

**11.1. Time and Place of Closing.** Provided that all the contingencies set forth in this Agreement have been previously fulfilled, the Closing shall take place at the place and time determined as set forth in this Agreement.

**11.2. Documents to be Delivered by Seller.** Seller shall obtain and deliver at Closing the following documents (all of which shall be duly executed and acknowledged where required), as applicable: (i) a deed sufficient to convey the Real Property (e.g., quitclaim and/or trustee's deed), (ii) bill of sale to convey the Personal Property, (iii) an assignment and assumption of licenses, certificates, permits, approvals, plans and applications and the like relating to the Property to the extent transferable, (iv) closing statement counterpart (v) keys to the Real Property, (vi) FIRPTA Affidavit, (vii) licenses, permits and similar authorizations

relating to the Property in Seller's possession, if any, (viii) the Final Sale Order, and (ix) such other documents or affidavits as may reasonably be required by the Title Company or by this Agreement or as may reasonably be required to carry out the terms and intent of this Agreement.

**11.3. Documents to be Delivered by Buyer.** At Closing, Buyer shall deliver to Seller (i) the Cash to Close, (ii) an assignment and assumption of licenses, certificates, permits, approvals, plans, applications and the like relating to the Property to the extent transferable, (iii) closing statement counterpart, (iv) evidence of Buyer's authority to purchase the Property, and (v) such other documents or affidavits as may reasonably be required by the Title Company or by this Agreement or as may reasonably be required to carry out the terms and intent of this Agreement.

**11.4. Payment of Costs.** At Closing, Seller and Buyer shall pay their own respective costs incurred with respect to the consummation of the purchase and sale of the Property including, without limitation, attorneys' fees (to the extent previously authorized to be paid by the Bankruptcy Court). Notwithstanding the foregoing:

(i) Buyer shall pay all costs associated with the Commitment and the premium on the Owner's Title Policy. Buyer pay all recording taxes and fees on the deed, except that Seller shall pay the cost of the grantor's tax on the deed; and,

(ii) Buyer shall pay for all other costs associated with the deed and any other closing documents as well as any due diligence efforts of the Buyer.

**11.5. Prorations.** The items in this Section 11.5 shall be prorated between Seller and Buyer as of the Closing Date:

(i) <u>Expenses</u>. Taxes, assessments, interest, insurance and other expenses of the Property shall be made as of the Closing Date. Buyer shall have the option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Taxes shall be prorated based on the current year's tax with due allowance made for maximum allowable discount and other exemptions. If Closing occurs at a date when the current year's millage is not fixed and current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. There shall be no re-proration.

(ii) <u>Utility Charges</u>. Final meter readings on all utilities charged to the Property shall be made as of the day preceding the Closing Date if feasible. Seller shall use reasonable efforts to arrange for, and shall pay for final billings of utilities to the day preceding the Closing Date, and Buyer shall be responsible for utilities used on or after the Closing Date. Any prepaid water, sewer, and other utility charges allocable to the period from and after the Closing Date shall be credited to Seller and any unpaid water, sewer, and other utility charges allocable to the period prior to the Closing Date shall be credited to Buyer. Seller and Buyer shall deliver written notices to the applicable utility companies notifying them of the change in ownership.

(iii) <u>Seller Deposits</u>. In the event Seller's deposits with respect to insurance, utilities or any other Seller accounts are remitted to Buyer, then such amounts shall belong to Seller, and Buyer agrees to deliver such amounts to Seller (it being understood and agreed that Buyer shall not be obligated to pursue the holders of such deposits or take any action on behalf of Seller to recover such amounts).

The parties acknowledge that all prorations shown on the closing statement as of Closing shall be final in all respects.

12. **Possession.** Seller shall deliver possession of the Property to Buyer at Closing subject to the Permitted Exceptions.

13. **Condemnation.** In the event of any commenced, to be commenced or consummated proceedings in eminent domain or condemnation (collectively, "**Condemnation**") which materially and adversely affects the operation of the Property, Buyer may elect, by written notice to Seller, within fifteen (15) days of its receipt of notice of such condemnation proceeding to terminate this Agreement and be relieved of its obligation to purchase the Property. If Buyer makes such election, the Deposit shall be returned to Buyer and neither Buyer nor Seller shall have any further liability to the other and shall be relieved of all obligations hereunder. If Buyer fails to make such election within such fifteen (15) day period, or if the Condemnation is not material and adverse to the operation of the Property, this Agreement shall continue in effect, there shall be no reduction in the Purchase Price, and Seller shall, prior to the Closing Date, assign to Buyer Seller's entire right, title and interest in and to any condemnation award or settlement made or to be made in connection with such Condemnation proceeding, in which case Buyer shall have the right at all times to participate in all negotiations and dealings with the condemning authority and to review any proposed settlement in respect to such matter it being understood that Seller shall be entitled to determine the final resolution in its reasonable discretion. Seller shall promptly notify Buyer in writing of any such Condemnation respecting the Property.

14. **Casualty.** If any fire, earthquake, windstorm or other casualty occurs and materially affects all or any portion of the Property on or after the date of this Agreement and prior to the Closing and the cost to repair or rebuild exceeds fifteen percent (15%) of the Purchase Price, Buyer may elect, within fifteen (15) days of the date of receiving notice of the extent of such casualty from Seller by written notice to Seller, to terminate this Agreement and be relieved of its obligation to purchase the Property. If Buyer makes such election, the Deposit promptly shall be returned to Buyer and neither Buyer nor Seller shall have any further liability to the other and shall be relieved of all obligations hereunder. If Buyer fails to make such election within such fifteen (15) day period, this Agreement shall continue in effect, the Purchase Price shall be reduced by the amount of applicable deductible and Seller shall, at or prior to the Closing Date, assign to Buyer Seller's entire right, title and interest in and to all insurance claims and proceeds up to the amount of the Purchase Price to which Seller may be entitled in connection with such casualty, in which case Buyer shall have the right at all times to participate in all negotiations and other dealings with the insurance carrier providing such coverage and to review any proposed settlement in respect to such matter; it being understood that Seller shall be entitled to determine the final resolution with the insurance carrier in its reasonable discretion.

Seller shall promptly notify Buyer in writing of any such casualty respecting the Property. Seller shall retain all risk of loss until the Closing.

    **15.**    **Notices.** Unless applicable law requires a different method of giving notice, any and all notices, demands or other communications required or desired to be given hereunder by any party (collectively, "**notices**") shall be in writing and shall be validly given or made to another party if delivered either personally, by facsimile or by Federal Express or other overnight delivery service of recognized standing, or by United States Mail, certified, registered, or express mail with postage prepaid. If such notice is delivered in person, or by facsimile, it shall be conclusively deemed given at the time of such delivery. If such notice is delivered by Federal Express or other overnight delivery service of recognized standing, it shall be deemed given upon the addressee's written receipt of delivery. If such notice is mailed as provided herein, such shall be deemed given three (3) business days after the date of the deposit thereof in the United States Mail. Each such notice shall be deemed given only if properly addressed to the party to whom such notice is to be given as follows:

    To Seller:    c/o Gerard A. McHale, Jr.. Trustee
                            1601 Jackson Street, Suite 200
                            Fort Myers, FL 33901
                            Facsimile: (239) 337-1178

    With copies to:    Hugh L. Patterson, Esquire
                            Willcox & Savage, P.C.
                            440 Monticello Avenue, Suite 2200
                            Norfolk, VA 23510
                            Facsimile: (757) 628-5566

                            and

                            Berger Singerman LLP
                            1450 Brickell Ave, Suite 1900
                            Miami, FL 33131
                            Attn: Debi Evans Galler, Esq.
                            dgaller@bergersingerman.com
                            Facsimile: (305) 714-4330

    To Buyer:    c/o Kent D. McPhail, Esquire
                            Dumas & McPhail, LLC
                            126 Government Street
                            Mobile, AL 36602
                            Facsimile: 251-438-2367

    With a copy to:    _____
                            _____
                            Facsimile: _____

Any party hereto may change its address for the purpose of receiving notices as herein provided by a written notice given in the manner aforesaid to the other party hereto.

16. **Finders' or Brokers' Fees.** Seller represents and warrants to Buyer that Seller has not dealt with any broker or finder to which a commission or other fee is due in connection with any of the transactions contemplated by this Agreement except for Murray Wise Associates LLC ("MWA") or any entity sharing a commission with MWA, to whom Seller shall pay a commission at Closing based on a certain compensation agreement that has been approved by the Bankruptcy Court. Buyer represents and warrants to Seller that except for the broker(s) indicated above, Buyer has not dealt with any other broker or finder to which a commission or other fee is due in connection with any of the transactions contemplated in this Agreement. The parties hereto each agree to indemnify, defend and hold harmless the other party against any loss, liability, damage, cost, claim or expense, including interest, penalties and reasonable attorneys' fees and costs, that the other party shall incur or suffer by reason of a breach by the indemnifying party of the representation and warranty set forth above. This provision shall survive the closing of the transaction contemplated by the Agreement.

17. **Event of Default.** In the event of a default under this Agreement by Seller, then following written notice from Buyer and a ten (10) day opportunity to cure (except for failure to close, which shall require no notice), Buyer shall be entitled to as its sole remedies to terminate this Agreement and obtain the return of the Deposit. In the event Buyer defaults under this Agreement, then following a ten (10) day notice to Buyer and opportunity to cure (except for failure to close, which shall require no notice), Seller may, as its sole and exclusive remedies, (i) retain the Deposit and pursue a claim against the Buyer to recover the difference between the Buyer's bid and the amount paid the ultimate purchaser of the Property, or (ii) proceed in equity to enforce Seller's rights under this Agreement.

18. **Miscellaneous.**

18.1 **Applicable Law.** This Agreement shall in all respects be governed by the laws of the State of Florida. Seller and Buyer agree and consent to the exclusive jurisdiction of the Bankruptcy Court of any dispute arising hereunder. Furthermore, Seller and Buyer agree that the execution and performance of this Agreement constitute sufficient contact with Florida for the purposes of establishing personal jurisdiction in Florida. By execution of this Agreement, each of the undersigned hereby waives any and all defenses it may have to claim a lack of personal jurisdiction by Florida courts. The Parties also waive all claims to the right of venue in any court outside of the State of Florida.

18.2. **Waiver of Jury Trial.** EACH OF THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN CONNECTION WITH ANY CLAIMS ARISING OUT OF THIS AGREEMENT.

18.3. **Further Assurances.** Each of the parties shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of its obligations hereunder, to carry out the intent of the parties hereto.

**18.4. Modification or Amendment.** No amendment, change or modification of this Agreement shall be valid, unless in writing and signed by all of the parties hereto. Each party has participated fully in the negotiation and preparation of this Agreement with full benefit of counsel. Accordingly, this Agreement shall not be more strictly construed against any party.

**18.5. Successors and Assigns.** Buyer may not assign this Agreement to a third party without Seller's written consent, which may be withheld in Seller's sole discretion. Notwithstanding the foregoing, Buyer shall have the right to assign this Agreement without the consent of Seller (subject to Bankruptcy Court approval) but upon written notice to Seller to any affiliate of Buyer. For purposes of this Section, the term "affiliate of Buyer" shall mean an entity which controls Buyer, which Buyer controls, or which is under common control with an entity that controls Buyer and such affiliate must be reasonably creditworthy in Seller's discretion. All of the terms and provisions contained herein shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and permitted assigns.

**18.6. Entire Agreement.** This Agreement constitutes the entire understanding and agreement of the parties with respect to its subject matter and any and all prior agreements, understandings or representations with respect to its subject matter are hereby canceled in their entirety and are of no further force or effect.

**18.7. Attorneys' Fees.** Should either party bring suit to enforce this Agreement, the prevailing party in such lawsuit shall be entitled to an award of its reasonable attorneys' fees and costs incurred in connection with such lawsuit.

**18.8. Headings.** The captions and Section headings used in this Agreement are inserted for convenience of reference only and are not intended to define, limit or affect the interpretation or construction of any term or provision hereof.

**18.9. Time.** Time is of the essence of all the terms, provisions and covenants of this Agreement. Time is important to both Seller and Buyer in the performance of this Agreement, and they have agreed that strict compliance is required as to any date or time periods set forth or described herein. All references to days herein (unless otherwise specified) shall include Saturdays, Sundays, and legal holidays. If the final date of any period which is set forth or described in this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States or the State of Florida, then, in such event, the time of such period shall be extended to the next day that is not a Saturday, Sunday or legal holiday.

**18.10. Exhibits; Schedule.** All exhibits and schedules are attached hereto and incorporated herein as a part of this Agreement.

**18.11. Severability.** In the event any term or provision of this Agreement is determined by appropriate judicial authority to be illegal or otherwise invalid, such provision shall be given its nearest legal meaning or be construed as deleted as such authority determines, and the remainder of this Agreement shall be construed to be in full force and effect

**18.12. Counterparts.** This Agreement may be signed in counterparts and exchanged and compiled electronically. Any compiled copy of this Agreement shall constitute

the complete, original agreement of the parties for all purposes. A facsimile signature or signature sent by email transmission shall be deemed to be an original for all purposes hereunder.

**18.13 Condominium Owners' Association, PUD, Homeowners' Association and/or Community Development District.** If the Real Property is part of or subject to a condominium owners' association, planned unit development, homeowners' association, co-operative or community development district, Buyer, at Buyer's own expense, is responsible for obtaining and reviewing the covenants, conditions, restrictions and/or bylaws of the relevant entity prior to the expiration of the Title Objection Period. Seller shall use reasonable efforts to assist Buyer in obtaining a copy of said documents. If Buyer does not object to any such documents during the Title Objection Period, then Buyer shall be deemed to have accepted all of said documents, including any restrictions, covenants or conditions therein contained.

**[SIGNATURES CONTAINED ON THE FOLLOWING PAGE]**

IN WITNESS WHEREOF, the parties have entered into this agreement on the dates set forth below:

**BUYER:**

CHRISTIANA TRUST, a division of Wilmington Savings Fund Society, FSB, as Trustee for Starwich Mortgage Loan Trust, Series 2012-13

By: ___[signature]___
Name: ___Tom Croft, SVP of Default for Carrington Mortgage Services, LLC. Attorney in Fact___
Date: ___9-4-___, 2013

**SELLER:**

By: _____
    Gerard A. McHale, Jr., solely in his capacity as Chapter 11 Trustee
Bankruptcy estate: Batista J. Madonia, Sr. and Evelyn M. Madonia
Case No.:8:13-bk-2895-KRM
Date: _____, 2013

## EXHIBIT A

Legal Description of Property

(D - #3 Heron Pointe House)

ALL that certain lot, piece or parcel of land situate, lying and being in the Town of Cape Charles, Capeville District, Northampton County, Virginia, known, numbered and designated as "Lot 44" as shown on a certain plat entitled "CORRECTION PLAT OF AMENDED SUBDIVISION OF 'HERON POINTE PARCEL' (PLAT BOOK 31, PAGE 5), AND 'PALMER COURSE PARCEL 1D-8D' (PLAT BOOK 31, PAGE 5), (PLAT BOOK 26, PAGE 62), FOR HERON POINTE, L.L.C., TOWN OF CAPE CHARLES, NORTHAMPTON COUNTY VIRGINIA", which is recorded in the Clerk's Office for the Circuit Court of Northampton County, Virginia in Plat Book 32 at Pages 65 through 70.

# SCHEDULE 1.2

## Personal Property

I-1184751.1
08/22/2013